UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUICKEN LOANS INC.,

        Plaintiff,

                                            Case No. 15-cv-11408

v.

                                            HON. MARK A. GOLDSMITH

UNITED STATES OF AMERICA, et al.,

        Defendants.

_____/

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 15)

### I.  INTRODUCTION

This matter is before the Court on Defendants' motion to dismiss or, in the alternative, to transfer this case to the U.S. District Court for the District of Columbia (Dkt. 15).  For the reasons explained fully below, the Court grants Defendants' motion to dismiss, because Plaintiff Quicken Loans Inc. has failed to state a claim either under the Administrative Procedures Act or the Constitution.  With no remaining independent basis to exercise jurisdiction, the Court, in its discretion, further declines to entertain Quicken's count for declaratory relief.[1]

### II.  BACKGROUND

The Federal Housing Administration ("FHA") is an entity within the United States Department of Housing and Urban Development ("HUD"), which insures mortgages and administers several mortgage default insurance programs.  Compl. ¶¶ 3, 30, 43 (Dkt. 1); W. & S. Life Ins. Co. v. Smith, 859 F.2d 407, 408 (6th Cir. 1988).  As a mortgage insurer, the FHA

_____

[1] Because the Court grants Defendants' motion to dismiss, Defendants' alternative request to transfer this case to the U.S. District Court for the District of Columbia is moot.  Quicken's motion for leave to file a sur-reply (Dkt. 25) is denied, because the Court concludes that additional briefing would not aid in the decisional process.

agrees to protect mortgage lenders against the risk of loss caused by borrowers' non-payment, as authorized by the National Housing Act of 1934, 12 U.S.C. § 1701 et seq.  See Compl. ¶¶ 43, 45.

One of the programs through which FHA insures home mortgages is the Direct Endorsement Lender ("DEL") program.  Through the DEL program, the FHA authorizes certain lenders to evaluate the credit risk of potential borrowers, underwrite mortgage loans, and certify those loans for FHA mortgage insurance without prior HUD review or approval.  See 12 U.S.C. § 1715z-21; Compl. ¶¶ 44, 47.  In underwriting the mortgage loan, the lender must determine whether both the borrower and the mortgage loan meet HUD's requirements for FHA insurance and whether "the proposed mortgage is eligible for insurance under the applicable program regulations."  24 C.F.R. § 203.5(a).

To monitor a lender's compliance with program requirements, the Secretary of HUD "may review all documents" required for a mortgage's insurance endorsement under the DEL program.  24 C.F.R. § 203.255(e).  Quicken refers to this review as the Post-Endorsement Technical Review ("PETR").  Compl. ¶ 48.  If this after-the-fact review reveals that the mortgage does not satisfy the requirements of the DEL program, "the Secretary may place the mortgagee on Direct Endorsement probation, or terminate the authority of the mortgagee to participate in the [DEL] program pursuant to § 203.3(d), or refer the matter to the Mortgagee Review Board for action pursuant to part 25 of this title."  24 C.F.R. § 203.255(e).  In addition, by certifying the mortgage for FHA insurance, the mortgage lender agrees to indemnify HUD for claims paid out to the lender in certain circumstances.  24 C.F.R. § 203.255(g)(1).[2]  A demand

---

[2] In particular, the mortgage lender agrees to indemnify HUD for: (i) "an FHA insurance claim paid within 5 years of mortgage insurance endorsement, if the mortgagee knew or should have known of a serious and material violation of FHA origination requirements;" or (ii) "if the mortgagee knew or should have known that fraud or misrepresentation was involved in connection with the origination of the mortgage . . . regardless of when an insurance claim is filed."  24 C.R.F. § 203.255(g)(3)-(4).

for indemnification may come from either the Secretary of HUD or the Mortgagee Review Board. Id. § 203.255(g)(5).

In April 2012, the Department of Justice ("DOJ") and the HUD Office of Inspector General ("HUD-OIG") began investigating Quicken — an FHA-approved lender for nearly 27 years — under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. See Compl. ¶¶ 8, 55. The scope of the investigation encompassed approximately 246,000 FHA loans that Quicken had originated from mid-2007 through December 31, 2011, which Quicken collectively refers to as the "Subject Loans." Id. ¶¶ 2, 14-15, 55-56.

As part of the FCA investigation, the DOJ and HUD-OIG assessed a sampling of 116 loans and determined that 55 of those loans did not comply with FHA lending guidelines and were improperly underwritten. Id. ¶¶ 6, 15, 18, 73, 77. To determine the magnitude of FHA violations, the DOJ and HUD-OIG extrapolated those "supposed defects on the same percentage basis across the entire loan population" — a methodology that Quicken calls "Conjectural Extrapolation Sampling." Id. ¶¶ 15, 73.

Quicken states that the DOJ and HUD-OIG's use of a sampling and extrapolation methodology constituted a "retroactive change of process for evaluating loans," as "HUD's practice for evaluating loan quality ha[d] long been to assess on an individual basis whether a loan was properly underwritten or in compliance with program rules." Id. ¶ 13; see also id. ¶ 20 (stating that HUD has a "long-standing approach of evaluating loan compliance on an individualized basis"). Quicken refers to this alleged prior practice as the "Loan-Level Mandate." Id. ¶¶ 59, 61. According to Quicken, under the Loan-Level Mandate regime, HUD would review loans on an individualized basis and, if HUD determined that a loan was improperly originated, it would notify the lender of its finding and allow the lender to file a

3

response.   If the parties were unable to resolve the problem, HUD would then seek indemnification for its actual losses.  Id. ¶¶ 13, 20, 49.  In a letter dated June 24, 2013, HUD informed Quicken that, because of the DOJ and HUD-OIG's investigation, HUD "would no longer evaluate individual loan liability" under the PETR process for loans Quicken originated between 2007 and 2011.  Id. ¶¶ 14, 71.

In an effort to resolve the alleged FCA violations, the DOJ and HUD-OIG's settlement demands sought both a financial penalty and a public statement of wrongdoing from Quicken. Id. ¶ 19.  At the same time, Quicken was aware that the filing of an FCA enforcement action was likely if the parties were unable to reach a resolution.  See id. ¶¶ 6, 23, 75.

Because the parties failed to reach a settlement, and "in the face of the DOJ and HUD-OIG's repeated threats" of an FCA action, Quicken claims that it "had no other option than to file this lawsuit" challenging "HUD's abandonment of its normal and well-established processes."  Id. ¶¶ 12, 23.  In its complaint, Quicken asserts claims under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 et seq., and the Due Process Clause of the Fifth Amendment; it also seeks declaratory and injunctive relief regarding its contention that it has not breached its contracts with HUD.[3]  Summarizing its claims, Quicken says it seeks two basic rulings from the Court:

> (a) that Defendants cannot determine the quality and compliance of loans through their newly fabricated Conjectural Extrapolation Sampling rather than through the loan-by-loan approach that was applicable at the time the loans were originated and upon which Quicken Loans relied; and (b) that the loans Quicken Loans made between 2007-2011 in fact were originated properly by Quicken Loans in accordance with the applicable FHA guidelines and program requirements, and pose no undue risk to the FHA insurance fund.

---

[3] Quicken named as Defendants the United States of America, HUD, the Secretary of HUD, HUD-OIG, the Inspector General of HUD-OIG, the DOJ, and the Attorney General.

Compl. ¶ 25.

Less than one week after Quicken filed this action, the United States filed an FCA enforcement action in the U.S. District Court for the District of Columbia, alleging that certain "loans underwritten and approved by Quicken and endorsed for [FHA] insurance between September 1, 2007 and December 31, 2011 . . . violated FHA rules," and that Quicken "falsely certif[ied] compliance with those rules," in violation of the FCA.  United States v. Quicken Loans Inc., No. 15-613, Compl. ¶¶ 1-2 (Dkt. 1) (D.D.C.).  Quicken filed a motion to transfer that case to this Court.  The District of Columbia district court has not ruled on that motion; instead, it stayed further proceedings in the FCA case, pending a decision of the current motion in the instant case.

### III.  STANDARD OF DECISION

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief."  Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010).  To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim.  Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).  A complaint will be dismissed unless it states a "plausible claim for relief."  Id. at 679.

### IV.  ANALYSIS

#### A.  Administrative Procedures Act

In its complaint, Quicken alleges that Defendants violated the APA in several ways. Counts I, II, and III assert that Defendants acted arbitrarily and not in accordance with the law by: (i) retroactively abandoning the Loan-Level Mandate; (ii) using statistical sampling; and (iii)

concluding that a substantial fraction of the Subject Loans were "defective." Compl. ¶¶ 89, 97, 103, 105; Pl. Resp. at 27-28 (Dkt. 22).

Review of federal administrative agencies' conduct is governed by the APA. See Am. Civil Liberties Union v. Nat'l Sec. Agency, 493 F.3d 644, 677 (6th Cir. 2007). The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Stew Farm, Ltd. v. Natural Res. Conservation Serv., 767 F.3d 554, 559 (6th Cir. 2014) (quoting 5 U.S.C. § 702).

However, the right to judicial review is limited in significant ways. The agency activity for which review is sought must fit within the statutory definition of "agency action." 5 U.S.C. § 551(13). Unless a statute expressly provides for judicial review of a particular agency action, the subject action must also be "final," and one for which there is no adequate remedy in court. Id. § 704; see also Bennett v. Spear, 520 U.S. 154, 175 (1997). Further, final agency action may be shielded from judicial review if it is one committed to "agency discretion." 5 U.S.C. § 701(a)(2). These limitations serve "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66 (2004). As discussed below, Quicken's APA claims run afoul of one or more of these limitations.

The Court must first identify the specific "agency action" Quicken now challenges. Quicken's complaint is replete with broad and conclusory characterizations of agency activities, but short on specificity. For example, the complaint challenges Defendants' "conduct" in abandoning the Loan-Level Mandate, Compl. ¶ 92, their "conclusion" that a significant number

of loans were non-compliant, id. ¶ 94, their "adoption" of the sampling technique, id. ¶ 98, and their "application" of the technique to a set of loans, id. ¶ 105. But these opaque terms do not meet the statutory definition of "agency action."

The APA defines "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The statute further defines these specific categories of agency action in a way that denotes "circumscribed, discrete agency actions." Norton, 542 U.S. at 62. The categories and their definitions are as follows:

- Rule — "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy"

- Order — "a final disposition . . . in a matter other than rule making"

- License — "an agency permit . . . or other form of permission"

- Sanction — "a prohibition . . . or taking of other compulsory or restrictive action"

- Relief — "a grant of money, assistance, license, authority, . . . [or] recognition of a claim, right, immunity, . . . or taking of other action on the application or petition of, and beneficial to, a person"

5 U.S.C. §§ 551(4), (6), (8), (10), (11). Further, the phrase "the equivalent or denial thereof" must also be a discrete action or "denial of a discrete listed action." Norton, 542 U.S. at 62.

Dismissal under Rule 12(b)(6) is "appropriate where the plaintiff's pleadings fail to identify a discrete, circumscribed agency action subject to review under the APA." Banner Health v. Sebelius, 797 F. Supp. 2d 97, 113 n.17 (D.D.C. 2011). In Banner, the court dismissed "vague and non-specific" allegations attacking how the Secretary of Health and Human Services ("HHS") had implemented various aspects of the Medicare program; but the court refused to dismiss allegations challenging the Secretary's promulgation of specific regulations and specific

7

determinations regarding the amount of outlier payments that the plaintiffs would receive in certain fiscal years. Id. at 109-110.

Like the "free-floating allegations" in Banner that triggered dismissal of claims "untethered to any discrete agency action," id. at 110-111, Quicken's opaque allegations about Defendants' "conduct," "conclusions," "adoption," or "application" require the same result. None of these gossamer terms has concrete content sufficient to be characterized as a "rule," "order," "license," "sanction," or "relief."

Quicken's complaint does refer to two types of action more concrete in nature: (i) HUD's June 24, 2013 letter, stating that it was suspending the PETR process for the Subject Loans, and (ii) the DOJ's filing of an FCA lawsuit. While these acts may be less nebulous, they still suffer from disabilities that undermine Quicken's effort to state an APA claim.

HUD's June 24, 2013 letter informed Quicken that the "FHA has ceased Post Endorsement Technical Reviews and Quality Assurance Division reviews of self-reported loans endorsed prior to January 1, 2012."[4]   The letter is clearly more concrete than the vaguely

---

[4] The letter — sent by the Deputy Assistant Secretary for Single Family Housing to Quicken's president — was not attached to the complaint.  However, at the Court's request during the motion hearing, the parties provided the Court with a copy of this letter, with the stipulation that it could be considered by the Court without converting the motion into one for summary judgment.  See Fed. R. Civ. P. 12(d).  The letter states, in pertinent part:

> As you know, the Department of Housing and Urban Development (HUD), HUD Office of Inspector General, and the Department of Justice, Civil Division, is [sic] jointly investigating Quicken Loans, Inc.'s origination and underwriting of FHA-insured loans.  As a result of this investigation, please be advised that FHA has ceased Post Endorsement Technical Reviews and Quality Assurance Division reviews of self-reported loans endorsed prior to January 1, 2012.  FHA will not respond to reports or inquiries concerning

described activities critiqued above, and Defendants do not challenge it as not amounting to "agency action."  However, Defendants do contend that the letter does not amount to "final" agency action, as required by the APA.  See Defs. Mot. at 22 n.5.  This Court agrees.

Finality under the APA embodies two requirements: (i) "the action must mark the consummation of the agency's decisionmaking process," rather than be "merely tentative or interlocutory [in] nature," and (ii) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  Bennett, 520 U.S. at 177-178.

Although Defendants claim in their motion papers that the cessation of the PETR process was just a temporary suspension, Defs. Mot. at 22 n.5, 34, there is nothing in the pleadings to support that.  And the letter, by its terms, does not address the duration of the suspension at all.  It is not possible, at this stage, to determine whether the letter represents consummation of the decisionmaking process.

Nonetheless, the second requirement for finality is clearly not met.  By announcing a cessation of the manner in which it had reviewed Quicken's loans for the stated period, HUD did not make any determination of Quicken's rights or obligations.  "An agency's determination of 'rights or obligations' generally stems from an agency action that is directly binding on the party seeking review, such as an administrative adjudication (like a recall proceeding) or legislative rulemaking."  Air Brake Sys., Inc. v. Mineta, 357 F.3d 632, 641 (6th Cir. 2004).  HUD's announcement of what HUD would no longer do would not be "directly binding" on Quicken,

---

these loans until further notice.  This change is effective immediately.

Quicken Loans, Inc. remains responsible for complying with HUD's requirements that lenders report to HUD any incidents they discover of fraud, illegal acts, irregularities, unethical practices or serious violations.

See Addendum.

because the announcement did not require Quicken to do or refrain from doing anything.  See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 22 (D.C. Cir. 2006) (agency action that does not actually "command anyone to do anything or to refrain from doing anything" is not reviewable under the APA (quoting Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 730 (1998)).

For the same reason, the HUD announcement created no legal consequence for Quicken. See Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 452 F.3d 798, 811 (D.C. Cir. 2006) (auto recall guidelines not final agency action, even though they may have significant practical consequences by inducing compliance by auto manufacturers, because there is no legal consequence from guidelines not codified into binding regulations); Air Brake Sys., 357 F.3d at 645 (a "devastating effect on the company's business" does not itself make an agency action final).  Because Quicken has failed to allege any facts that the letter either embodied a binding legal determination or imposed a legal consequence on Quicken, the letter cannot constitute final agency action.[5]

Although not specifically alleged, the implicit contention in the complaint is that the letter was issued contemporaneously with the Defendants' alleged decision to "use" sampling. See Compl. ¶ 73.  However, nothing in the letter addresses sampling.  Nor does it discuss how

---

[5] The cases cited by Quicken on finality, Pl. Resp. at 29 n.22, do not counsel a different result, because in each case there was some concrete legal consequence to the agency action.  See City of Dania Beach v. F.A.A., 485 F.3d 1181, 1188-1189 (D.C. Cir. 2007) (holding FAA letter was final agency action because it created legal consequences by authorizing use of additional runways to which neighboring cities and landowners objected); Ciba-Geigy Corp v. U.S. Envtl. Prot. Agency, 801 F.2d 430, 437 (D.C. Cir. 1986) (holding EPA letter was final agency action because it created a legal consequence by stating EPA's position that it need not hold a hearing before cancelling registration of a plaintiff's product). Quicken also cites Eagle-Picher Indus., Inc. v. U.S. Envtl. Prot. Agency, 759 F.2d 905 (D.C. Cir. 1985), but that case did not address "final agency action" under the APA; rather, it addressed whether a challenge to certain EPA regulations was timely, even though it was clearly after the statutorily mandated challenge period — an analysis that has nothing to do with the instant case.

HUD proposes to conduct loan reviews, either as to previously issued loans or future ones. Thus, the letter cannot constitute "final agency action" with regard to sampling.

To the extent Quicken is arguing that the "use" of sampling is itself agency action, even apart from the letter, that theory is defective. As discussed above, the opaque term "use" is not "circumscribed, discrete" agency action that fits within any of the categories for agency action under the APA. Put simply, the particular type of methodology employed by HUD (or by the DOJ or HUD-OIG) does not constitute an agency rule, order, license, sanction, or relief, or some equivalent to these actions. Nor would the "use" of sampling qualify as "final agency action," given that the "use" of sampling would not result in any legally binding determinations by any Defendant or create legal consequences for Quicken.

The complaint also suggests, but does not specifically allege, that sampling is somehow connected to Defendants' alleged demands for payment by Quicken of a "large financial penalty as supposed reimbursement for losses that did not occur," Compl. ¶ 75, and that sampling is somehow linked to the FCA action that was ultimately filed. Id. But neither a settlement demand, nor the filing of an enforcement action, constitutes final agency action. New Jersey Hosp. Ass'n v. United States, 23 F. Supp. 2d 497, 500 (D.N.J. 1998) (holding that FCA settlement letters sent by the DOJ did not constitute final agency action because the "settlement letters merely indicate a belief by the DOJ that plaintiff's member hospitals may have violated the Medicare Act"); City of Oakland v. Holder, 901 F. Supp. 2d 1188, 1195 (N.D. Cal. 2013) (holding that the DOJ's "filing of a civil action does not fit within the APA's definition of agency action").[6]

---

[6] Although its prayer for relief asks the Court to issue an injunction prohibiting Defendants from "initiating or pursuing any suit or other proceeding based on or using such any [sic] sampling, including without limitation any suit under the False Claims Act," Compl. at 43, Quicken has abandoned that request, stating that it "does not seek to prevent the government from suing under

In its written response to the motion, Quicken claims it was not seeking to challenge the FCA action.  And at the hearing, Quicken tried to clarify that it was seeking only to compel resumption of the manner in which HUD had administered the loan program.  But even this refinement of the complaint's theories does not save Quicken's APA claims. For the reasons stated above,  HUD's decision about how to monitor its potential mortgage exposure — through its selection of mortgages to review or the methods selected for quantifying possible loss — is hardly final agency action; such action results in no final determinations or legal obligations for Quicken.  In addition, as explained below, the administration of the loan program is confined to HUD's discretion, which exempts it from the APA.

Judicial review is unavailable where the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see also Norton, 542 U.S. at 63-64, 67 (the APA only empowers a court to compel non-discretionary agency action); Lincoln v. Vigil, 508 U.S. 182, 190 (1993) ("[A]gency action is not subject to judicial review to the extent that such action is committed to agency discretion by law.").  Perhaps the best illustration of discretionary agency action is the decision to initiate an enforcement action.  People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric., 7 F. Supp. 3d 1, 10 (D.D.C. 2013) ("One classic example of action committed to agency discretion is an agency's decision whether or not to take an enforcement action.").

HUD's monitoring of its FHA program is of a similar discretionary nature.  The regulations make it clear that it is within HUD's sound discretion to perform any type of post-endorsement review.  See 24 C.F.R. § 203.255(e) ("Following endorsement for insurance, the Secretary may review all documents required by paragraph (b) of this section." (Emphasis

_____

the FCA, . . . and it does not seek to bar the government from exercising its prosecutorial discretion."  Pl. Resp. at 13 (emphasis omitted).

added)).  Such broad and permissive authorization of monitoring activities — containing no objective standards for judicial review — necessarily implies that agency discretion has been accorded by the law, such that judicial review under the APA is not allowed.  See Heckler v Chaney, 470 U.S. 821, 835 (1985) (statute that "authorized" HHS to conduct "examinations and investigations" into possible violations of food and drug standards "commit[ed] complete discretion to the Secretary to decide how and when [enforcement provisions] should be exercised"); see also Madison-Hughes v. Shalala, 80 F.3d 1121, 1127-1128 (6th Cir. 1996) (regulation requiring healthcare providers receiving HHS funds to submit "timely, complete and accurate compliance reports" to the Department "as responsible Department officials . . . may determine to be necessary" did not provide a meaningful standard for judicial review and was left to agency discretion, such that Department action or inaction relative to the regulation was immune from judicial review under the APA); Gillis v. U.S. Dep't of Health & Human Servs., 759 F.2d 565, 575-577 (6th Cir. 1985) (in suit challenging HHS's monitoring of hospitals' statutory obligation to provide reduced-cost care, court held that "[t]he mechanism by and extent to which HHS 'monitors' as well as 'enforces' compliance fall squarely within the agency's exercise of discretion," and, therefore, an alleged failure to monitor and enforce obligations was not reviewable under the APA).[7]

---

[7] Quicken offers a related theory that HUD has "abdicated" its role in administering the FHA program to DOJ and HUD-OIG.  But this suffers from the same disabilities of Quicken's other theories.  The vagueness of the term "abdication" fatally undercuts any contention of "discrete, circumscribed" agency action.  It is also unaccompanied by any plausible allegation of a binding determination or legal obligation, the necessary prerequisites for final agency action.  Finally, HUD's apparent decision to suspend PETR while the FCA investigation proceeded — the apparent "abdication" Quicken alleges — is the kind of discretionary agency judgment that involves a "complicated balancing of a number of factors which are peculiarly within its expertise."  People for the Ethical Treatment of Animals, Inc., 7 F. Supp. 3d at 10  (noting that agency enforcement decisions involve balancing factors, such as determining where agency resources are best spent, whether a particular enforcement action best fits the agency's policies, and sufficiency of resources).

Finally, no matter what theory Quicken serves up to justify judicial review, its APA claims are doomed by the principle that relief under the APA is only available if the plaintiff has no adequate remedy at law.  5 U.S.C. § 704; accord Bennett, 520 U.S. at 175.  The APA's requirement that there be no other adequate remedy in court ensures "that the APA's general grant of jurisdiction to review agency decisions is not duplicative of more specific statutory procedures for judicial review."  Bangura v. Hansen, 434 F.3d 487, 501 (6th Cir. 2006) (citing Bowen v. Massachusetts, 487 U.S. 879, 903 (1988)).  In order "for a cause of action to provide an adequate remedy in the § 704 context, a court need only be able to provide relief of the same genre to the party seeking redress, but not necessarily relief identical to relief under the APA." Rimmer v. Holder, 700 F.3d 246, 262 (6th Cir. 2012).

Here, the FCA action provides an adequate remedy.  As stressed above, none of Defendants' alleged actions can possibly cause any binding legal consequence for Quicken. Whether the action is characterized as the June 24, 2013 letter, the "use" of sampling in administering the FHA program, a settlement demand, the filing of a lawsuit, and/or the "abdication" of agency responsibility, no cognizable legal harm will result, unless and until the enforcement action results in a judgment against Quicken.  And that enforcement action will adequately provide Quicken with the opportunity to defend against any effort to impose such a legal consequence.  See 5 U.S.C. § 703 ("Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."); Parke, Davis & Co. v. Califano, 564 F.2d 1200, 1206 (6th Cir. 1977) (in an APA action, finding that "it was an abuse of discretion to

14

enjoin" the agency, given that a "pending enforcement action[] provided an opportunity for a full hearing before a court").[8]

Accordingly, Quicken has failed to allege plausible claims for relief under the APA, and the Court dismisses those claims pursuant to Rule 12(b)(6).

### B. Procedural Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Procedural due process requires that the Government's deprivation "be implemented in a fair manner," United States v. Salerno, 481 U.S. 739, 746 (1987), affording "such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976). To this end, the Supreme Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the

---

[8] See also Ass'n of Am. Med. Colls. v. United States, 34 F. Supp. 2d 1187, 1193 (C.D. Cal. 1998) (finding that the plaintiffs had an adequate alternative legal remedy, because "they may obtain judicial review by defending a prosecution under the FCA, if [the government] should decide to pursue one"); New Jersey Hosp. Ass'n v. United States, 23 F. Supp. 2d at 501 (holding that the plaintiffs had "an adequate remedy in a court — the ability and opportunity to raise a defense to an FCA action by the DOJ"); Ohio Hosp. Ass'n v. Shalala, 978 F. Supp. 735, 742 (N.D. Ohio 1997) (finding that the plaintiffs could obtain judicial review by "(1) refusing to settle to avoid prosecution; (2) presenting their defenses to an False Claims Act lawsuit; and (3) winning that lawsuit"), rev'd in part on other grounds, 201 F.3d 418 (6th Cir. 1999); N.A.A.C.P. v. Meese, 615 F. Supp. 200, 203 (D.D.C. 1985) ("Plaintiffs likewise cannot satisfy the second prong of the APA requirement, for almost by definition they have an adequate remedy in a court, that is, the remedy of opposing the Attorney General's motions in the court in which he files his papers. Not only would the filing of such an opposition there be a judicial remedy obviating the need for resort to the APA in this District, but it is a far more appropriate, far more logical remedy than a lawsuit here seeking injunctive relief.").

case.").  For this reason, procedural due process requires an opportunity for some kind of hearing before an individual is finally deprived of a property interest.  Zinermon v. Burch, 494 U.S. 113, 127 (1990).

Quicken's procedural due process claim is premised on Defendants' use of a sampling and extrapolation methodology in determining the amount and/or percentage of the Subject Loans that were noncompliant with FHA program requirements.  See Compl. ¶¶ 114-117.  In its response brief, Quicken claims that it has a constitutionally protected property interest in its "contractual insurance coverage," and Defendants' use of a sampling and extrapolation methodology threatens to deprive Quicken of that property interest.  Pl. Resp. at 33.

Assuming without deciding that Quicken has a cognizable property interest, Quicken's procedural due process claim fails, because Quicken makes no plausible allegations in its complaint to support the contention that it has been deprived of that interest.  There are no allegations in the complaint that HUD is no longer insuring FHA loans or has threatened that future loans will not be insured.  There are no allegations that HUD has denied any claim for insurance relative to the Subject Loans.  Thus, there are no plausible allegations that Quicken has been deprived of its interest in insurance coverage.

Quicken's other deprivation theory is similarly flawed.  It claims, in its briefing, that, "to the extent HUD uses sampling and extrapolation in the FHA program . . . to require Quicken Loans to pay money to HUD to indemnify HUD for any supposed losses on previously-insured loans, that would deprive Quicken Loans of its property interest in that money."  Pl. Resp. at 34 n.28.

However, there is no allegation that HUD or any other Defendant has actually deprived Quicken of any money.  There may have been settlement demands, and there certainly now

16

exists a formal legal demand in the form of an enforcement action.  But these actions amount merely to internal agency acts from which no legal consequence flows at this time.  Unless and until there is a legally significant consequence from an action, there can be no due-process deprivation premised on that action.   See, e.g., Indus. Safety Equip. Ass'n v. Envtl. Prot. Agency, 837 F.2d 1115, 1122 (D.C. Cir. 1988) (where EPA guide recommending certain regulated products had no binding legal effect on owner of product not referenced in guide, its issuance did not constitute a deprivation of property interests under the Fifth Amendment); Kerley Indus., Inc. v. Pima Cnty., 785 F.2d 1444, 1446 (9th Cir. 1986) (erroneous conclusion in air quality official's letter that permit was void did not amount to deprivation because letter had no legal effect); Foster v. U.S. Envtl. Prot. Agency, No. 2:14-cv-16744, 2015 WL 5786771, at *4-5 (S.D. W.Va. Sept. 30, 2015) (allegations that an EPA compliance order "has direct legal consequences that touch upon important property rights possessed by the plaintiffs . . . are sufficient to ground a due process claim.").

Unquestionably, the mere filing of a lawsuit does not amount to the deprivation of a property interest.  See, e.g., City of Charleston, S.C. v. Hotels.com, LP, 520 F. Supp. 2d 757, 770-771 (D.S.C. 2007) (the filing of a civil lawsuit does not constitute a violation of the Due Process Clause, because "the ordinary course of civil litigation under the Federal Rules of Civil Procedure provides ample protection of" a party's rights to notice and an opportunity to be heard).  And while that suit may ultimately result in Quicken being deprived of property — in the form of damages — that deprivation will come only after Quicken has had its full panoply of due process rights in defending itself in the FCA enforcement action.  That pre-deprivation process is sufficient to satisfy due process.

Therefore, whatever may be Defendants' alleged use of sampling and extrapolation, it is not a procedural due process violation.  Quicken has not yet been deprived of any property interest, and it will have the opportunity to be heard at a meaningful time and in a meaningful manner prior to any actual deprivation.

Because Quicken has failed to state a plausible procedural due-process claim, that claim is dismissed pursuant to Rule 12(b)(6).

**C.  Declaratory Judgment and Injunctive Relief for Non-Breach of Contract**

Lastly, Quicken's complaint seeks a declaration that (i) "Defendants cannot use any sampling to determine whether any . . . of the Subject Loans were properly underwritten and originated in compliance with FHA program requirements," and (ii) Quicken did not breach any individual insurance contract with HUD because "each Subject Loan was properly underwritten and originated by Quicken Loans in compliance with FHA program requirements."  Compl. at 43 (prayer for relief); see id. ¶¶ 108, 109.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  However, the Court must have "an independent basis for federal subject matter jurisdiction," as the Act only provides courts with the discretion to fashion a remedy.  Heydon v. MediaOne of Se. Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-672 (1950)).  The Court has dismissed Quicken's APA and due-process claims.  All that remains is Quicken's non-breach claim.

The exercise of jurisdiction in a declaratory judgment action is consigned to the court's substantial discretion.  Wilton v. Seven Falls Co., 515 U.S. 227, 286 (1995).  In exercising that discretion, courts consider five factors:

> (1) Whether the declaratory action would settle the controversy;
>
> (2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
>
> (4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction;[9] and
>
> (5) Whether there is an alternative remedy which is better or more effective.

Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (citing Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984)).  The Sixth Circuit has cautioned district courts not to exercise jurisdiction over a declaratory judgment action "unless it serves a useful, practical purpose."  Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co., 177 F.2d 942, 944 (6th Cir. 1949).

The first and second factors — theoretically — weigh in favor of the court exercising jurisdiction over Quicken's non-breach claim.  To the extent that Quicken seeks a declaratory judgment that it properly underwrote all of the Subject Loans and, therefore, did not breach its contracts with HUD, such a declaration could conceivably settle the only legally cognizable controversy between the parties.  If the Court reviewed all 246,000 of the Subject Loans and

---

[9] Because there is no related action pending in a state court, the fourth factor is not relevant.

determined which ones complied with FHA requirements, that would serve a useful purpose —
albeit at a colossal and unnecessary cost to judicial efficiency.

There is a far superior alternative remedy — the FCA action — which must be
considered under the fifth factor of the analysis. Reviewing nearly a quarter of a million loans
would be a staggering waste of judicial resources. Such a massive review would also require this
Court to give an advisory opinion regarding loans for which there is no actual case or
controversy, given that the Government is not contending that all the loans are deficient. See,
e.g., Coffman v. Breeze Corp., 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure
is available in the federal courts only in cases involving an actual case or controversy . . . and it
may not be made the medium for securing an advisory opinion in a controversy which has not
arisen.").

By contrast, the FCA action presents itself as the appropriate litigation vehicle to resolve
the dispute between the parties, because it is the legal action in which the Government has or will
set out those specific loans that the Government is challenging as non-compliant. In fact, the
FCA creates the precise procedure Quicken has acknowledged would be appropriate for
resolving the issue whether it has breached any of its contracts with HUD.[10]

---

[10] Quicken's complaint had sought a declaration that all of its loans were compliant. See Compl.
¶ 27 ( "[T]he Court should declare that the FHA loans that Quicken Loans made from 2007-2011
were originated by Quicken Loans properly and in compliance with all requirements, and do not
pose an undue risk to the FHA insurance fund."); see also id. at 43 (prayer for relief) (seeking
"declaratory judgment that each Subject Loan was properly underwritten and originated by
Quicken Loans in compliance with FHA program requirements"). However, in its briefing
opposing the motion, Quicken claims that its complaint does not require the Court to undertake
an individual review of nearly 250,000 loans; rather, it claims that it is seeking a "declaratory
judgment that any specific loans that Defendants identify through the Loan-Level Mandate as
uninsurable did in fact comply with FHA program requirements." Pl. Resp. at 21. Putting aside
the revisionist characterization of its complaint, the new position Quicken staked out in the
briefing supports the conclusion that the FCA is a superior vehicle for resolving the controversy,
because the Government will identify, in that action, the loans claimed to be non-compliant.

In light of the FCA action addressing the precise issue of the quality of any specific Subject Loan, a declaration of rights in this action would be essentially redundant. The enforcement action will also allow the parties to address the DOJ's use of sampling for FCA violations, assuming it intends to use sampling for purposes of establishing either liability or damages. The FCA action is, therefore, the preferable arena for the resolution of any legally cognizable controversy between the parties. AmSouth, 386 F.3d at 791 ("The existence of a coercive action is important to [a court's] determination that this declaratory action would serve no useful purpose.").

Quicken claims that this case is different from the FCA action, because it "does not seek a declaration of non-liability under the FCA." Pl. Resp. at 14. This assertion is disingenuous. The bedrock of the Government's FCA action concerns Quicken falsely certifying compliance with FHA rules when it came to Subject Loans, which, in turn, violated the FCA. See United States v. Quicken Loans Inc., No. 15-613, Compl. ¶¶ 1-2 (Dkt. 1) (D.D.C.). In order to succeed in that case, the Government will first have to show which of the Subject Loans violated FHA requirements. That is the same issue Quicken asks to be resolved in this action. The redundancy is both obvious and needless.

The third factor also weighs in favor of declining to entertain declaratory relief. That factor is meant to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." AmSouth, 386 F.3d at 788. "The question is . . . whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." Id. at 789. Given the procedural posture of this case, it certainly appears as though Quicken's complaint was filed for the purpose of acquiring a favorable forum; Quicken filed its

lawsuit less than a week before the looming FCA enforcement action was filed.  And Quicken's complaint actually acknowledged that the threat of the Government bringing an enforcement action prompted the filing of the instant action.  Compl. ¶ 23 ("[I]n the face of the DOJ and HUD-OIG's repeated threats of an improper and heavy-handed False Claims Act lawsuit designed to injure the company's reputation, Quicken Loans had no other option than to file this lawsuit.").   Thus, the procedural-fencing factor weighs against the Court exercising jurisdiction.[11]

Weighing all the factors, the Court declines to exercise jurisdiction over Quicken's request for declaratory judgment for non-breach of contract.[12]

In its briefing and at the hearing, Quicken contends that its non-breach-of-contract claim is actually a breach-of-contract claim.  Pl. Resp. at 9, 16-17; 9/3/2015 Hr'g Tr. at 65-68 (Dkt. 27); see also Pl. Mot. to File Sur-Reply at 3 (Dkt. 25).  Defendants argue that Quicken cannot rework its non-breach claim into "a claim of HUD's alleged breach."  Defs. Reply at 12 (Dkt. 24).  Because there are no "magic words" a plaintiff must use to state a claim, the Court must,

---

[11] Quicken also claims its request for an injunction means the Court must retain jurisdiction over the entirety of the complaint.  Pl. Resp. at 19.  Quicken relies on Adrian Energy Associates v. Michigan Public Service Commission, 481 F.3d 414 (6th Cir. 2007), and its progeny for the proposition that, where a complaint seeks damages or injunctive relief, dismissal of a related declaratory count is not appropriate because there is no efficiency gained in doing that.  Id. at 422.  However, the premise of Adrian is that there remain non-declaratory counts that the court must adjudicate.  Id. ("When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources." (emphasis in the original)).  In our case, no other counts remain to be adjudicated, as the APA and due-process claims are being dismissed.  If the Court dismisses the declaratory count, there will be no Adrian-type concern that efficiency gains will be lost.

[12] Defendants also argue that, under Federal Rule of Civil Procedure 12(b)(1), the Court should dismiss Quicken's non-breach claim because the Court lacks jurisdiction.  Defs. Mot. at 32.  More specifically, Defendants contend that the Government has not waived its sovereign immunity.  Because the Court declines to exercise its jurisdiction over Quicken's non-breach claim, this additional argument is moot.

instead, "examine the substance of a plaintiff's allegations" in the complaint.  Stevens v. Saint

Elizabeth Med. Ctr., Inc., 533 F. App'x 624, 629 (6th Cir. 2013).

Although count IV in Quicken's complaint does state that Defendants were "acting in a

manner inconsistent with the terms of those contracts," Compl. ¶ 107, there is no allegation that

any Defendant has breached a contract.  Nor would a breach claim even be remotely plausible

against most of the Defendants — i.e., HUD-OIG, the Inspector General of HUD-OIG, the DOJ,

and the Attorney General — given that no conceivable contract could have been entered into

with those Defendants.  Further, count IV is entitled "Declaratory Judgment and Injunctive

Relief for Non-Breach of Contract," id. at 40 (emphasis added), and Quicken clearly seeks a

"declaratory judgment that it did not breach any individual insurance contract with HUD."  Id.

¶ 109 (emphasis added); see also id. at 43 (prayer for relief seeking a "declaratory judgment that

each Subject Loan was properly underwritten and originated by Quicken Loans in compliance

with FHA program requirements").  Nothing in the prayer for relief states that Quicken seeks a

declaration that Defendants breached any contract.  Therefore, the Court concludes that Quicken

did not plead a breach-of-contract claim in its complaint.[13]

---

[13] During the hearing, Quicken's counsel stated that Quicken "can amend" the complaint to add a
breach-of-contract claim if the Court "thinks that [Quicken was] unclear."  9/3/2015 Hr'g Tr. at
68.  This does not amount to a request to amend, as counsel did not state unequivocally that
Quicken was seeking leave to amend.  Even if he had, the oral request would not have been
sufficient under Federal Rule of Civil Procedure 15, because that rule requires the filing of a
motion.  See Willecke v. Kozel, 395 F. App'x 160, 167-168 (6th Cir. 2010) (district court did not
abuse its discretion in not ruling on plaintiffs' request to amend, contained in their written
opposition to summary judgment motion, because no motion to amend was filed); see also
Belizan v. Hershon, 434 F.3d 579, 582-583 (D.C. Cir. 2006) (district court did not err in refusing
to recognize, as a motion to amend, counsel's statement at hearing on motion to dismiss that he
"probably could, if it was required, file another . . . complaint," because "Rule 15(a) — even as
liberally construed — applies only when the plaintiff actually has moved for leave to amend the
complaint; absent a motion, there is nothing to 'be freely given'").  Because Quicken has filed no
motion to amend, this issue is not properly before the Court.

## V.  CONCLUSION

For the reasons stated above, the Court grants Defendants' motion to dismiss (Dkt. 15), and denies Defendants' alternative request to transfer the case as moot.  The case is dismissed with prejudice, and judgment will be separately entered.

SO ORDERED.

Dated:  December 31, 2015                    s/Mark A. Goldsmith
       Detroit, Michigan                    MARK A. GOLDSMITH
                                         United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 31, 2015.

                                  s/Karri Sandusky
                                  Case Manager

# ADDENDUM



OFFICE OF HOUSING

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

**JUN 2 4 2013**

Mr. Jay Farner
President
Quicken Loans, Inc.
1050 Woodward Avenue
Detroit, MI 48226

Dear Mr. Farner:

As you know, the Department of Housing and Urban Development (HUD), HUD Office of Inspector General, and the Department of Justice, Civil Division, is jointly investigating Quicken Loans, Inc.'s origination and underwriting of FHA-insured loans. As a result of this investigation, please be advised that FHA has ceased Post Endorsement Technical Reviews and Quality Assurance Division reviews of self-reported loans endorsed prior to January 1, 2012. FHA will not respond to reports or inquiries concerning these loans until further notice. This change is effective immediately.

Quicken Loans, Inc. remains responsible for complying with HUD's requirements that lenders report to HUD any incidents they discover of fraud, illegal acts, irregularities, unethical practices or serious violations. See Handbook 4060.1 REV-2, paragraphs 1-14, 2-23, and 7-3J, and Mortgagee Letter 2011-02.

Sincerely,

Charles Coulter
Deputy Assistant Secretary for
Single Family Housing

cc:
Ms. Bobbi Macpherson
Quicken Loans, Inc.
1050 Woodward Avenue
Detroit, MI 48226

www.hud.gov          espanol.hud.gov